UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                      CASE NO 18-cr-20042

                                           Honorable Victoria A. Roberts

v.

WADE HAMPTON PERKINS, III,

       Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Wade Perkins is a limitless sex offender. In fact, he told another sex offender, "I have no limit I'll go as low as I can get." Tragically for the victims in this case, Perkins was true to his words. He comes before this Court to be sentenced for sexually exploiting three children, the *oldest* of which was just two years old. Perkins sexually assaulted these infants/toddlers, recorded it, and distributed it to others in exchange for still more child pornography. Perkins has two other, unrelated convictions for sex offenses involving children. Perkins has repeatedly professed, "I can't stop." Nor would he if he could, as he has also declared, "I love doing it." The guidelines call for a life sentence for Perkins. The government agrees. Perkins cannot stop himself from hurting children. But this Court's sentence can.

1

# I
# RELEVANT PROCEDURAL AND FACTUAL HISTORY

## A. THE LOUISIANA OFFENSE

In April 2016, Defendant Wade Perkins moved from the Detroit area to Grand Isle, Louisiana. In the early morning hours of April 28, 2016, Perkins had sex with an escort he met on the internet. He paid her $150.

A few hours after the escort left his house, Perkins texted her about his "fetishes." He confessed to being sexually attracted to little girls, to having engaged in sex acts with children multiple times (as recently as Christmas), and to being unable/unwilling to stop this sexual deviancy. Perkins initially blamed another person for introducing him to sex with children, using this excuse to deflect responsibility while gaging the escort's response to this topic. Thereafter, Perkins made several stunning admissions, including the following:

- "but [its] now something [I] enjoy also."

- "I can't stop I like it too much."

- "I never looked at it as taking away there (sic) innocence[,] I looked at it as an experience that is either enjoyed or not and if not it's not forced if so it something to enjoy."

- [how young was the youngest…] "6. Just fingered and licked tho."

- [regarding age 6] "but at that age they do know right from wrong and they don't get hurt at that age."

- "I cant [its] (sic) something I enjoy now I cant stop liking it ive tried I really have."

- "If ppl like something I try to support it no matter what it is and help them enjoy it. Who is to really say what is legal age tho[?]"

- "I can't stop."

- "Well I don't know what to do… cause I like doing it…I actually love doing it. But I can't just stop like that."

- "It's not something u can just stop cold turkey. The only way I could stop is by doing it a few more times and getting it out of my system by satisfying my craving for it. So that I don't want it anymore."

Perkins then requested that the escort assist him in satisfying these cravings. Perkins requested a girl under 15 years of age for him to "play with." He promised to pay the escort for acquiring a girl for him. The escort notified law enforcement. Under the direction of the police, the escort told Perkins she had access to a 6-7 year old girl for the night. Perkins asked her to drive the child to his house, leave the girl alone with him, and pick her up after he was done. Perkins insisted on being alone with the child, noting "I'm sure u would feel a lil uncomfortable being in the next room."

3

Perkins promised to pay the escort $100 that evening, with an additional $300 to follow. When asked what he planned to do with the child, Perkins wrote, "Just licking and slowly gently finger and have her play with me. I promise u I will not hurt her." The escort initially suggested Perkins would have just 30-45 minutes with the girl. Perkins balked, demanding "an hour or 2" alone with her. Perkins orchestrated every detail of the evening, even telling the escort, "just bring her in and leave real quick so I can get to it."

Law enforcement arrested Perkins at his residence that same evening. In September 2017, Perkins pleaded guilty to various sex crimes for attempting to have sexual contact with the 6 year-old. He received a sentence of 26 years and 4 months. (PSR ¶ 75).

### B. THE CURRENT OFFENSES

In the 24 hours after his arrest in Louisiana, agents from Homeland Security Investigations reviewed Perkins' electronic devices. Agents recovered 939 child pornographic images and 55 child pornographic videos. Perkins appeared in several of those images/videos. Specifically, Perkins photographed and recorded himself sexually assaulting at least three children. All three were two years old or under. Each victim is described in turn.

**Minor Victim #1 (hereafter MV-1)** was an infant less than one year old when she and her mother lived next door to Perkins. Beginning in December 2014, Perkins

and his wife Judy frequently volunteered to babysit the child.  Perkins used these opportunities to repeatedly sexually assault MV-1.  MV-1's mother identified several child pornographic images of MV-1 found on Perkins' devices.  In those images, MV-1 was between 8 and 10 months old.  Perkins created at least 136 still images and six videos of child pornography involving MV-1, including images and videos of himself performing oral sex on the baby, ejaculating on her face, and posing her unclothed vagina for the camera.

**Minor Victim #2 (hereafter MV-2)** was born in 2014.  Between April 2015 and February 2016, Perkins and Judy babysat MV-2 on several occasions.  MV-2's mother identified several child pornographic videos of MV-2 found on Perkins' electronic devices.  Perkins created at least 96 still images and four videos of child pornography involving MV-2, including images and videos of himself sexually assaulting the child with a sex toy and penetrating her with his finger.

**Minor Victim #3 (hereafter MV-3)** lived with Perkins and his wife for a three-week period in February 2015.  When MV-3's mother went to work, Perkins sexually assault the girl and recorded it.  The child was between 4 and 5 months old.

Agents in Detroit located, identified, and interviewed the mothers of victims in this case.  All of them described how Perkins and his wife offered to babysit for them.  None of them knew what Perkins did while he had their children in his care.

Beyond locating the victims, agents in Detroit examined Perkins' social media and email accounts. Given Perkins' interests, the results were not surprising.

Perkins' Dropbox account was filled with child pornography. HSI found hundreds of images and videos of children being sexually assault, including the material involving MV-1, MV-2, and MV-3. Perkins' email account contained hundreds of emails discussing child exploitation experiences and the trading of child pornography. Importantly, Perkins sent child pornographic images of MV-1 to his trading partners. Perkins also discussed his sexual interests, telling various other people the following:

- "Yes, I loved the baby, when I would put my dick into her mouth she automatically wanted to suck on it I didn't have to do anything. She couldn't really fit much in but it felt great and was a suck (sic) a turn on I would bust pretty quickly. But she seemed to like the taste cause she would start sucking harder and smile."

- When asked by another user what experience he has, Perkins wrote, "Ive done incest young and k9"… when asked follow up questions, Perkins states, "And the youngest I've messed with was a baby…"

- To yet another user, Perkins explained his sexual history with children this way, "I've messed with all different ages that were younger than me. Some were 15, 14, 13, 10, 5, 3 but the only the older ones I could fuck….. The youngest I got my dick inside was a 13 yr old but it was only about 17 at the time. And the younger ones all I can do is eat them out and play with there (sic) clit. Or rub my dick on there pussy or let them grab hold of it and let them suck on the tip."

- Another email partner asked how young of a child Perkins would have sexual contact with, to which Perkins responded "I have no limit ill go as low as I can get and ive been with very very yng (sic)."

The email account also discussed other sexually deviant topics. For example, Perkins told several of his trading partners about his sexual activity involving dogs. True to his words, Perkins's devices contained videos and images of him committing bestiality.

### C. PERKINS THREATENS HIS EX-WIFE

The review of electronic devices, cloud storage accounts, email accounts, and other evidence took several months. For his part, Perkins remained in jail in Louisiana awaiting charges in Michigan for the crimes he committed against MV-1, MV-2, and MV-3. Worried about the potential Michigan charges, Perkins attempted to reach out to his ex-wife. But she did not respond. Perkins knew his ex-wife would be able to confirm his access to the victims, perhaps providing damaging testimony against him. So on August 24, 2017, Perkins wrote a letter to his ex-wife's father. In the letter, Perkins wrote:

> I have been telling you about all the stuff I am willing to do and have done to ruin [Perkins's ex-wife]'s life, since she wont (sic) speak to me at all. And is willing to testify against me on my charges in Michigan.
> \*\*\*
> Second is for her not to testify against me at all and not to even show up to any of the court dates no matter what. It would be best for her to disappear for a while til all of this is over. Now this is very important. And I want you to talk to [Perkins's ex-wife]. And she can

7

and will tell you the type of people my family and I know. Because of the type of business I was into I met and delt (sic) with and know a lot of people, and so does my family. I know some straight up ruthless savage killers. I have a lot of family members in gangs. And she can and will confirm that. The type of people I know will snatch you all up and nobody will ever find you or see you again. I am not saying that is what is going to happen. I'm just telling you the type of people my family and I know. Now I have already spoke to a few people and paid them to take care of business for me if need be. I have given them your address and told them where [Perkins's ex-mother in law] lives.

But if [Perkins's ex-wife] shows up to testify against me, if she says a single word about me. They will follow her home to find out where she lives for sure. And from there they will do what they were paid to do. . . . Please talk her out of this. And to just disappear for a while til this is all over. And no harm will come to her or her family.

A copy of the full letter will be provided under seal to the Court as Government's Exhibit A. *See also* PSR ¶ 88.

### D. PERKINS'S CRIMINAL HISTORY

Perkins has two prior criminal convictions (not including the Louisiana conviction for attempting to purchase the 6 year-old girl). On September 20, 2006, Perkins pleaded guilty to criminal sexual conduct in the second degree. A month later, Perkins received a five-year probationary sentence. Perkins did poorly on probation. He used marijuana, missed meetings with his probation officer, and moved residences without permission. As to this last violation, it is important to note that Perkins moved in with his sister, who lived across the street from the victim

in the case and close to an elementary school. For that offense, Perkins was required to register as a sex offender.

On June 2, 2014, Perkins was convicted of fleeing and eluding the police. He received 2 years' probation. Perkins went on to violate the terms of his probation on several occasions, including using drugs, not completing an Alternative Work Force requirement, and failing to pay court costs. Based on a review of the docket, it appears that Perkins remained on probation while he committed the sexual assaults against MV-1, MV-2, and MV-3.

### E. PERKINS PLEADS GUILTY

Based on his conduct involving MV-1, MV-2, and MV-3, as well as his transportation of child pornography from Michigan to Louisiana, Perkins pleaded guilty to three counts of producing child pornography, one count of transportation of child pornography, and one count of committing a sex offense against a child while being subject to the sex offender registry. (PSR ¶ 6). His crimes carry a minimum sentence of 35 years, and up to 200 years, in prison.

# II
# SENTENCING GUIDELINE CALCULATIONS AND RELEVANT 3553(a) FACTORS

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary" in each individual case. Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; and (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. The relevant sentencing factors are addressed in turn.

### A. NATURE AND CIRCUMSTANCES OF THE OFFENSE

The nature and circumstances of Perkins' offenses are extraordinary, even for a production of child pornography case. Perkins took advantage of the trust that three different mothers of infants/toddlers placed in him and his wife. Perkins manipulated access to these young children, then used that access to repeatedly sexually assault his helpless victims. The images and videos he produced are unspeakable. Perkins did not merely take close-up pictures of the children's genitals (although he did that as well), but rather he actively sexually assaulted these little

girls and then created lasting images of the assaults. Perkins' sexual assaults included forced oral copulation, use of objects, and ejaculating on these children.

As if Perkins' conduct in producing these images was not enough, Perkins thereafter distributed some of these images to other child pornography users. Perkins did so to continue to amass his significant collection of child pornography. As he wrote to one person, "I trade pic for pic and vid for vid." It is therefore fair to wonder how many times Perkins used the images he created to trade with others.

In evaluating the nature and circumstances of these offenses, Perkins' words are important too. In emails, Perkins spoke gleefully about his sexual exploits involving children. Perkins told his cohorts "I am only into girls but love them young," "nothing is too young for me," and "Ive been with very very yng." When asked about whether he had his own children, Perkins said "I wish I had kids," adding "I would start with them as a baby."

The nature and circumstances of this offense call for a life sentence.

B. **THE HISTORY AND CHARACTERISTICS OF THE OFFENDER**

Wade Perkins is a prolific sexual predator. Perkins is now a three-time convicted sex offender with victims ranging in age from infants to a 6 year-old to a teenager. Perkins' own words explain this most-alarming characteristic. When texting with the escort in Louisiana, Perkins wrote about his sexual interest in children: "I can't stop I like it too much," "I cant stop liking it ive tried I really have,"

and "I don't know what to do… cause I like doing it…I actually love doing it. But I can't just stop like that." Beyond being unable or unwilling to stop acting on his sexual interest in children, Perkins does not see it as a character flaw. As he told the escort, "Who is to really say what is legal age tho[?]" Perkins' sexual deviancy extends to animals as well, as agents recovered from his devices several images/videos of Perkins forcing himself on dogs.

Perkins is also manipulative. The mothers of his victims trusted Perkins with their most prized possession: their children. Perkins exploited that trust. Perkins lied to these mothers when he assured them that their children would be safe with him. Perkins did not seek to help these single mothers with free babysitting, but rather his only interest was to fulfill his sexual desires. Perkins manipulation of the escort deserves mentioning as well. Perkins presented his "fetishes" to her as something he could not control, then urged her to help him stop: "the only way I could stop is by doing it a few more times and getting it out of my system by satisfying my cravings for it." Perkins then asked the escort to "help" him. That type of manipulation demonstrates Perkins' character for doing whatever he can to gain access to young, vulnerable children. Perkins even tried to manipulate the police upon his arrest in Louisiana. When law enforcement asked him about whether he had ever sexually assaulted a child previously, Perkins said no. Only after being confronted with the hundreds of images of child pornography found on his phone

did Perkins admit some of his prior sexual contact with children and identify himself in the images. Still, he refused to name the children he assaulted. (PSR ¶ 11).

Perkins character was also revealed in the letter he wrote from prison threatening his ex-wife. Perkins mailed the letter to his ex-father-in-law after not receiving responses to the letters he sent to his ex-wife. Perkins cited his access to "ruthless savage killers" who would "do what they were paid to do" should Perkins' ex-wife testify against him on these charges. (See Gov. Exh. A).

Another characteristics of Perkins is his unwillingness to comply with court orders. For Perkins first adult conviction—the sexually assault of a teenage girl—he was discharged from probation without improvement after more than 5 years. Perkins repeatedly violated the terms of his probation, including moving across the street from the victim in the case. (PSR ¶ 73). Perkins then lasted just two and one-half years before being arrested again. This time, Perkins led police on a high speed chase that resulted in a disabled car, a foot pursuit, and Perkins attempting to break into a residential home. (PSR ¶ 74). Somehow, Perkins again avoided jail time. Instead, Perkins served less than two years of probation during which he committed the repeated sexual assaults in this case and the crimes in Louisiana. Perkins managed to accumulate three warrants for probation violations during this period of probation as well. Clearly, Perkins does not comply with court orders.

The history and characteristics of Perkins support a life sentence. He is an epic sexual deviant, a multi-time convicted felon, a liar, a manipulator, and a threat to his ex-wife. By his own admissions, nothing is off limits to Perkins. No child is too young. No sexual act is too perverse. No relationship is too sacred. And no lie or threat is too extreme for Perkins. The history and characteristics of this offender justify a life sentence.

### C. THE PURPOSES OF SENTENCING

Next, section 3553(a) calls for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, protect the public, and adequately deter others. Here, these factors all favor a life sentence.

Most importantly, the public needs to be protected from Perkins. Perkins will not stop acting on his sexual interest in children. Perkins admitted as much to the escort, stating repeatedly that he "can't stop." Nor does he appear interested in stopping, as he exclaimed, "I actually love doing it." Perkins has had several opportunities to stop hurting children. But nothing has deterred him. Perkins criminal sexual conduct against children did not stop after he sustained his first sex offense conviction. Nor did it stop after the first infant he sexually assaulted, or the second, or the third. Perkins did not cease pursuing sex with children after amassing a large collection of child pornography, trading with others, or even creating his own. Perkins move to Louisiana made no difference. In fact, Perkins had not been

14

in Louisiana a full month before orchestrating a sexual encounter with a six-year-old child. Perkins cannot be deterred and the public needs protection from him.

As for promoting respect for the law, two items deserve mentioning. Promoting respect for the law requires Perkins' sentence to run consecutively to his Louisiana sentence. The two crimes are wholly separate from one another. Perkins' production of child pornography involving the infants/toddler in this case occurred prior to him moving to Louisiana, prior to him meeting the escort, and prior to him being arrested by law enforcement. Perkins did not use, or even reference, the child pornography he produced in Michigan in committing his Louisiana crimes. There is simply no basis to run these offenses concurrently with one another, and to do so would be to promote disrespect for the law. That is, the effect of running the sentences concurrently would be to discount Perkins' Louisiana crimes because he committed other serious crimes in Michigan. Perkins should not receive a benefit for committing other crimes. Providing a concurrent sentence in this case would have that exact effect. Second, Perkins' prior conduct under court supervision mocked the law. He did not abide by court orders, failing to successfully complete either of his two probationary periods. Perkins should not receive yet another sentencing break (this time in the form of a below guidelines sentence) when his prior conduct has shown his disobedience of the law and court mandates.

15

Finally, what sentence could provide just punishment for the damage Perkins has caused? Perkins has left disaster in his wake. He crushed the trust afforded to him by the victims' mothers. He threatened to kill his ex-wife. He tried to have sex with a six year-old girl. By his admission, he has had sexual contact with at least a half a dozen underage girls. Just punishment for Perkins is to spend the rest of his life in jail.

### D. THE ADVISORY GUIDELINES RANGE

The applicable guidelines range is life in prison. The statutory maximums here cap that guidelines range at 2,400 months. (PSR ¶ 102).

### E. AVOIDING SENTENCING DISPARITIES

Congress also instructed sentencing courts to avoid unwarranted sentencing disparities. There are very few offenders quite like Perkins. However, there is ample precedent for a life sentence for the worst child sexual predators. In the Eastern District of Michigan, at least three prior sex offenders have received life sentences. *See United States v. Steven Demink*, 10-20676 (E.D. Mich. 2010) (defendant with no prior criminal convictions received life sentence from Judge Rosen based on his online conduct where he manipulated women to have sex with their children on camera for defendant); *United States v. Mario Asakevich,* 11-20343 (E.D. Mich. 2012) (Judge Cox sentenced repeat sex offender to life in prison for online enticement); *United States v. James Frazee*, 10-20082 (E. D. Mich. 2010)

(Judge Lawson sentenced defendant, a previously convicted sex offender who produced child pornography of a 14 year-old girl, to life in prison). *See also United States v. Jason Soper*, 14-20042 (E.D. Mich. 2015) (Judge Rosen imposed a 58-year sentence for previously convicted sex offender with two victims).

Other courts around the country have likewise imposed life sentences—or the equivalent of life sentences—against significant child pornography offenders. *See U.S. v. Williams*, 2013 WL 6851125 (11th Cir. Dec. 31, 2013) (unpublished) (100 year sentence affirmed); *U.S. v. Goodale*, 2013 WL 6847032 (8th Cir. Dec. 30, 2013) (life sentence reasonable for defendant who sexually abused two boys); *U.S. v. Hamilton*, 2013 WL 6726953 (2d Cir. Dec. 23, 2013) (unpublished) (1800 month sentence affirmed after defendant pleaded guilty to 5 counts of production of child pornography, court stated "Nor are we persuaded that a life sentence in the case at bar overstates the seriousness of the offense given Hamilton's role in producing graphic child pornography by filming himself sexually abusing children as young as four years old."); *U.S. v. Hodge*, 729 F.3d 717 (7th Cir. 2013) (1380 month sentence reasonable for production and other child pornography crimes, including the abuse of a 9 year-old girl); *U.S. v. Herrick*, 2013 WL 275908 (6th Cir. Jan. 25, 2013) (unpublished) (1140 month sentence reasonable for three counts of production of child pornography for a Boy Scout camp director); *U.S. v. Boroczk*, 2013 WL 197709 (7th Cir. Jan. 18, 2013) (70 year production sentence

reasonable); *U.S. v. Cannon*, 703 F.3d 407 (8th Cir. 2013) (840 months for sexual exploitation of a child upheld); *United States v. Miller*, 2013 WL 4256278 (5th Cir. Aug. 12, 2013) (unpublished) (upheld 70 year sentence for production and possession); *United States v. Snyder*, 425 Fed. Appx. 64 (2d Cir. 2011) (upholding a 75 year sentence for 5 counts of production of child pornography as substantively reasonable); *United States v. Castillo*, 2011 WL 2014943 (11th Cir. 2011) (upholding a sentence of 1,560 months (130 years) for 4 counts of production of child pornography and one count of possession of child pornography as substantively reasonable); *United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) (affirming as reasonable a 100-year (1,200 months) sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim); *United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for two counts of producing child pornography and one count of distribution); *United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters).

# III
# CONCLUSION

For the reasons set forth above, the government recommends a guidelines sentence (200 years) in this case.

                                  Respectfully submitted,
                                  MATTHEW SCHNEIDER
                                  U.S. ATTORNEY

                                  s/Kevin M. Mulcahy
                                  Kevin M. Mulcahy
                                  Assistant United States Attorney
                                  kevin.mulcahy@usdoj.gov
                                  211 W. Fort St., Suite 2001
                                  Detroit, Michigan 48226
                                  313-226-9713

Date: February 12, 2019

## **CERTIFICATE OF SERVICE**

It is hereby certified that service of the foregoing Sentencing Memorandum filed this 12th day of February, 2019, has been made upon counsel for defendant (Mark Satawa) by filing this document electronically with the Court. Defense counsel will thereby receive a copy through the Court's ECF system.

                                  s/Kevin M. Mulcahy
                                  Kevin M. Mulcahy
                                  United States Attorney's Office